We'll hear the first case on calendar, Ruano v. Sessions. Good morning, may it please the court, Alyssa Williams for the appellant petitioner Mr. Eddie Ruano. Your honors, there are three main issues before the court here today, all of which it is the petitioner's position are resolved by the recent Supreme Court decision in Esquivel-Quintana. The first issue is whether or not Mr. Ruano's conviction for Connecticut violation of risk of injury to a minor categorically qualifies as an aggravated felony crime of sexual abuse. The IJ did not find that it was, right? That's correct, your honor. The board then subsequently did its own analysis. Though it's not clear what it did the analysis for what purposes, but let me let you continue with your argument. Absolutely, thank you, your honor. The second point is that whether or not the petitioner's conviction again for risk of injury qualifies as a crime of child abuse, neglect, or abandonment as that is defined. And again, Esquivel-Quintana is very relevant on this position. And the last issue is whether or not the immigration court in the board erred in determining that Mr. Ruano was subject to the particularly serious crime bar and therefore precluded him from additional other relief. That was the IJ's ground. That was the IJ's ground, your honor. There was an alternate ground. It was an alternate ground, correct. And our main focus is... But if that holds, then we don't have to worry about a lot of other things, right? Well, your honor, it's related. So the particularly serious ground bar would only apply if there's an aggravated felony. However, if there's an aggravated felony, nor a crime of child abuse, proceedings would just be terminated because Mr. Ruano was a lawful permanent resident. He would, in that sense, receive back his green card and continue residing in the United States where he's lived since 1989. I'm not sure I completely follow you, so help me out. I had thought that if he was deported because...if the deportation order was because it was a serious ground, what it meant was that he could reapply, whereas if he was deported for a crime of child abuse, he could not. Is there something more to the difference than that? Correct, your honor. So first, the immigration judge has to determine whether or not he is removable. And the only grounds of removal alleged here were that he has an aggravated felony crime of sexual abuse, and that he has...or alternately, that he has a crime of child abuse, neglect, or abandonment. If we find he has neither of those, then proceedings would have to be terminated. We never get to the issue of, is he eligible for asylum, or is he precluded because of the particularly serious crime bar? And that's really the heart of our issue. We believe he has the best case to keep his green card. And again, under Esquivel Quintana v. Sessions. Very relevant here, and again, issued subsequent to the board's decision in this case. Esquivel Quintana directly impacts the sexual abuse designation in this case, because that is what Esquivel Quintana looked at. But it similarly relates to our arguments about whether or not this is a crime of child abuse, neglect, or abandonment. And I can get to each of those points in turn. As to the first ground, is this a crime, an abuse of a minor? The Supreme Court told us, this is indeed a very broad definition, and it rejected the Sixth Court's Chevron deference to the board. And it said, no, what we can do here is just look at the clear statutory language, that we apply the normal rules of statutory interpretation. Sexual abuse of a minor, in that case, they focused a lot on this issue of a minor, but they also talked about the fact that sexual abuse has to be these other words that are used in that portion of the INA. We don't have that here. The Connecticut statute 53-21, for risk of injury to a minor in Connecticut, includes all various types of conduct that do not necessarily include sexual acts. So it can risk, the language says, can threaten the health of such child, can threaten the life or limb. It's very clear from the statutory language that other actions apart from sexual acts are included in Connecticut's risk of injury to a minor statute. Like leaving them too long at the school bus stop in sub-zero weather. Exactly. That's exactly right, Your Honor. And I think, again, under, as the Supreme Court has instructed us, under the strict application of the categorical approach, as they found in Esquivel-Quintana, this is not a conviction for sexual abuse of a minor. When we move to the next portion, therefore, if he does not have an aggravated felony sexual abuse of a minor. Is that the only hook for an ag felony here? That is all that was alleged in this case. Whether or not it was an aggravated felony under A-43, that's the portion for sexual abuse, yes, Your Honor. There is a separate grounds of removal that were alleged, which is the separate grounds where someone can be removed or charged with removal under 8 U.S.C. 1227 A-2E for a crime of child abuse, neglect, or abandonment. And again, although this was not the precise issue in front of the Supreme Court in Esquivel-Quintana, the court's interpretation of the statutes and the board's decision is very relevant here. So again, in Esquivel-Quintana, the Supreme Court, again, instructed that we look at the ordinary language and definition of these terms. And even if the board's interpretation is broad, it's not so broad as to be limitless. There are sort of guideposts here on what can and can't qualify as these certain crimes. Importantly, in Esquivel-Quintana, the Supreme Court did not apply the civil statutes that the board has used in its decisions, matter of SORM and matter of Velazquez, which is what the government heavily relies on. Matter of SORM and matter of Velazquez, the board used the federal civil definition of sexual abuse to decide what is relevant here. And the Supreme Court said, no, it's not these criminal definitions of sexual abuse. They're different and they have different contexts. And I think that's very important because that is what makes matter of SORM and matter of Velazquez no longer relevant after the Esquivel-Quintana decision of the Supreme Court. Also importantly, in that respect, that's the reason why Flores v. Holder from this court is no longer relevant. Flores v. Holder relied very extensively on the SORM and matter of Velazquez decisions from the board, which again now, under the Supreme Court's decision, we would offer are no longer the proper interpretations. Let me ask you about Esquivel-Quintana. The court there narrowed the generic crime of sexual abuse of a minor to require that the victim be younger than 16 for purposes of But it's not apparent that it expressedly, that it moved beyond that context to reject the generic federal definition of sexual abuse of a minor in all instances. Is there something you see in the opinion that does that? No, you are correct, Your Honor. It did not go on to reject the entire generic definition. But again, as to that respect, it did tell us sexual abuse has to be sexual acts. And when we look at the Connecticut statute, it includes much more type of conduct beyond just sexual acts. And furthermore, Your Honors, we would point out that Esquivel-Quintana, excuse me, that this court in Flores v. Holder went into a long discussion of why this court was not agreeing with the Tenth Circuit in Ibarra. And in the Tenth Circuit in Ibarra, the Tenth Court's decision in Sorum v. Velasquez, because the board was applying the civil definition of child abuse. And now the Supreme Court's decision seems to suggest that indeed the Ibarra holding is accurate. And therefore, I think the Supreme Court would disagree with this court's analysis also in Flores v. Holder. Is it clear to you that the Connecticut statute, insofar as it allows different conduct, is not divisible? Because as I understand the record, there's no question that what your client did in this case is sexual abuse. Indeed, he served eight years, or he was given an eight-year sentence for it, which is quite severe. Well, I would, Your Honor, this court has routinely emphasized, as has the Supreme Court, that the underlying facts of the case are not what is relevant. Well, if it's an indivisible statute. So to get to Your Honor's question, we don't believe that it's an entirely, it is a divisible statute. So I should clarify what I mean by that. 53-21, in and of itself, is divisible into subsections A and B. And subsection A is divided into A1, A2, A3. That part is divisible. Sections A1, A2, and 3 are different crimes. We look at the record of conviction, we know Mr. Ruano was convicted under 53-21A1. However, subsection A1 is not further divisible. Subsection A1 itself includes lots of different conduct that qualify for conviction under A1, and not all of that conduct meets the definition of sexual abuse or child abuse. Okay. We'll hear you on the medal. Good morning. May it please the court, Lindsay Corliss for the respondent. We ask that this court deny the petition for review because petitioner failed to exhaust any challenge to his removability on the child abuse grounds before the board in his appeal. The agency properly found, as a matter of discretion, that he was convicted of a particularly serious crime, and because petitioner did not argue any issue related to the agency's denial of his cat deferral claim in his opening brief before this court, and therefore waived that issue. What was the basis for the conclusion that it was a particularly serious crime? And was that consistent with what the IJ found? So the board's conclusion was that it was a particularly serious crime, both on the grounds that it was an eight-year sentence. It was a crime committed on a vulnerable person, a child in this case. It was a crime of a sexual nature. All of these issues contributed to it being a discretionary particularly serious crime, even in the event that this court were to find that it was not an aggravated felony. So if I may, I'll begin with the agency's finding that petitioner was properly found removable based on his conviction for a crime of child abuse, neglect, or abandonment. So this court in Flores did afford Chevron deference. Your view is we lack jurisdiction. It is. It is. I was going to get to the alternate finding, but I can move on to... Go ahead. So in the alternative, if this court... I'm aware that this court has found that the exhaustion requirement is mandatory, but to the extent that this court is going to assert jurisdiction, it was a proper finding, and so I can defend that if... It's mandatory, but it's not... Right. ...categorically, but you've preserved... The government has preserved objection to that? Yes, but as far as if this court is going to assert jurisdiction, that was a proper finding. So in Flores, this court did afford Chevron deference to the board's broad definition of child abuse, neglect, and abandonment in matter of Lascaz and matter of Sorum. So therefore, the proper definition of that term in this court is any offense involving the intentional, knowing, reckless, or criminally negligent act or omission that constitutes maltreatment of a child or that harms a child's well-being physically or mentally, even in the event that there's not an actual injury, so long as the likelihood of the injury is sufficiently high. Now, here, it's undisputed that Petitioner was convicted of violating Connecticut General Statute 53-21A1, which prescribes willfully or unlawfully causing or permitting a child to be placed in a situation where his life or limb is endangered or where his health or his morals are likely to be endangered or doing any act likely to impair the health or morals of a child. Now, Connecticut's courts have clarified that there are two prongs of that statute. There's the situation prong, and there's an act prong. Now, under the act prong, the courts have clarified that in order for the statute to be constitutional and not unconstitutionally unvague, that there have to be certain requirements that the state must prove in order to achieve a conviction under the act prong. The first, when dealing with acts injurious to a child's morals, then the defendant must have touched the private parts of a child under age 16 in a sexual or indecent manner. And if... That would be this case. Yes. In this case, that is the prong that Petitioner did plead guilty to. I will mention that that's only relevant to the finding that he was convicted of an aggravated felony, because the agency actually found that this was a categorical match to a crime of child abuse, neglect and abandonment. So in order for you to uphold that finding, this court would have to agree that all of the conduct under both prongs constitutes a crime of child abuse, neglect or abandonment. And there are no other acts that would, other than touching the child in an inappropriate sexual manner, that would fall into that category that he pleaded guilty to, or that he was convicted of? No, there aren't. If we are going to do the modified categorical approach for the aggravated felony, yes. The only acts that could be prosecuted under the part of the statute to which he pled guilty are deliberate touching of a child's intimate parts for sexual or indecent purpose. But just to go back to the child abuse finding for a second, all of the elements of Petitioner's do fall under the elements of the generic definition of child abuse, neglect or abandonment. First, it has the proper mens rea. This is a general intent crime where the defendant must have engaged in a general intent to engage in the conduct, coupled with a reckless disregard of the consequences of that act. So that does fall under the mens rea requirement in the generic definition. Second, the statute requires that the defendant engage in conduct that constitutes maltreatment of a child. Whether or not the conduct is directly directed at a child, when an adult is placing a child in a situation where he is likely to be injured, he was either blatantly abused or sexually abused, or he was placed in a situation where his life or limb was going to suffer those consequences. That is maltreatment of a child. Some of the things you listed don't fall in the sexual category at all. No, they don't. And that's why I'm saying, so he is removable based on his conviction for child abuse, neglect and abandonment. And the board found that that was a categorical match. So he was categorically removable. However, they applied the modified categorical approach only when determining whether or not he was convicted of an aggravated felony sexual abuse of a minor. So the divisibility of the statute only matters in that context. In this context, the entire statute constitutes both the sexual conduct and non-sexual conduct. All of that that is prosecuted under the entire statute matches the generic definition. If we were to conclude, as you urge us, that he was removable for a crime of child abuse, do we even have to reach the aggravated felony question on cancellation, or are you urging us to uphold it on the grounds that it fits the serious crime requirement? You do not have to address whether or not he was convicted of sexual abuse of a minor, because the fact that he is removable takes care of removability. Then he applied... You're urging us on both the grounds that it's not exhausted and it's correct in any event. So those are your two arguments on that? Yes. And he's ineligible for withholding of removal if he was convicted of a particularly serious crime. And the agency can get to a finding that someone is convicted of a particularly serious crime in two different ways. Either the per se way, which requires the aggravated felony plus the five-year sentence, or just as a matter of discretion. And as a matter of discretion, the sorts of things that the agency is required to be looking at are the circumstances underlying the commission of the crime, the nature of the crime itself, and the sentence imposed. And in this court, the agency properly examined all of those factors, determined that this was a sexual crime committed against a vulnerable member of society, and it carried an eight-year sentence. So therefore, it was a particularly serious crime as a matter of discretion, even if it weren't sexual abuse of a minor. I will at that point quickly move on just to briefly discuss whether or not the agency properly matched the elements of petitioner's conviction to the elements of sexual abuse of a minor. First, given that this statute requires that the age of the victim be under 16, this statute does match that general definition of sexual abuse of a minor as described in Esquivel-Quintana. Now, Esquivel-Quintana's holding was quite narrow. It was only dealing with whether or not a person of age 16 or 17 could consent to sexual activity, such that that sexual activity would not be considered abusive. And so here, where the statute necessarily is only having the victim be under age 16, it comports with the Supreme Court's precedent there. Second, the minimum mens rea requirement of this crime is that the victim should be of this general intent to commit the crime. And while this Court hasn't specifically – I see I'm running out of time, but I will just mention that this Court hasn't – while this Court hasn't specifically opined as far as what the minimum mens re requirement is for sexual abuse of a minor, it has found, such as in the case Uch, that consenting to a child's sexual performance with knowledge of the content of that performance is sufficient to qualify under the statute. So here, where we have general intent to commit the – to deliberately touch the child, it's a higher level of culpability mentally than merely consenting. And – Are you saying that he would be – that it's unnecessary for us to decide or for anybody to decide whether he was convicted of an aggravated felony? It is not necessary in order to deny the petition for review. So long as this Court also – If he was convicted of an aggravated felony, he'd never be able to return to the United States, right? Well, I guess the – He'd become inadmissible. I mean, he would also be – I believe he's also inadmissible based on the fact that he's been removed based on his – on his prior removable – prior removal on the grounds of his child abuse conviction in any event. So there would be no impact? No. One way or the other? No. Whether he would be inadmissible in the future, even on a, you know, valid visa? No, I don't believe – because he – having a prior removal order also renders someone inadmissible. Okay. You know, part of the argument, if I understand it correctly, of the petitioner is that the BIA, by contrast to the IJ, found him removable for an aggravated felony. Do I understand you to be suggesting that no, even the BIA considered aggravated felony at what I'll call the cancellation step, and that the only grounds for his removal is child abuse? That is – yeah, I understand the confusion there, because I agree that the board was not clear as far as what they were exactly holding with respect to that. But what they do say is that they're upholding the immigration judge's decision on that point. So what the immigration judge found was petitioner is removable based on his categorical crime of child abuse. He was ineligible for relief based on his aggravated felony in the past. In fact, the board would err, wouldn't it, if it found him removable on a ground that the IJ did not? Unless the board specifically stated that it was reversing the immigration judge, then we would say that those decisions didn't match. But the board does – the board actually specifically says that they're upholding the aggravated felony finding – the finding that it was an aggravated felony on the grounds that the immigration judge provided in his decision to find out that he's actually only talking about whether or not this person is eligible for relief based on that aggravated felony finding. So there's no finding by the board that he's removable based on his aggravated felony finding. Thank you. All right. Thank you very much. We'll hear rebuttal. Thank you, Your Honors. Just as to this first issue that was raised about whether prior counsel best preserved these issues for exhaustion, I would just point out that the Second Circuit has held, as I think Your Honor was alluding to, that issue exhaustion is not a statutory requirement. But it's mandatory without being statutory, whatever that amounts to. Right. And the fact that the board in and of itself addressed this issue as to an aggravated felony, sexual abuse of a minor, and then the Supreme Court subsequently issued this new decision, I think, because it's an issue of law, is appropriately before the court. I'm not sure I understand that. It's not the aggravated felony that there's the concern that you didn't preserve. It's whether or not child abuse finding is what you didn't preserve. I thought it was the opposite, Your Honor. So if I misspoke, and perhaps I have it backwards. Either way, I would just point out that the BIA did extensively address both of these issues. So whether or not the petitioner maybe best preserved it before the lower court, the board did extensively look at these. So in some sense, it has been preserved. And our jurisprudence, I think, has said that if the BIA addresses it, then it's eligible to be reviewed on appeal. Yes, I believe that's correct as well, Your Honor. And the next point that the government discussed extensively is this idea of whether or not requires deliberate touching, so on and so forth. I would just point, Your Honors, back to the statutory language. That is not in there. In the statutory language, it does not define this issue of impairing the health and morals of the child. It did later evolve through some Supreme Court case law. But again, I believe through some, excuse me, Connecticut case law. But the Supreme Court, again, has directed us to look to the clear statutory language. If there is not a match between the Connecticut statute, the state statute, and the federal definition, then there is not a categorical match and you can't find this person. But why wouldn't we look to what the Supreme Court of Connecticut says that wording means? I think, Your Honor, because that language is not in the statute. So there's been various interpretations in Connecticut. Connecticut Supreme Court interprets the words that are in the statute. And then, I don't know the answer. I'm just asking. It does, Your Honor. I think that's where perhaps the Mathis decision of the Supreme Court would be relevant, because we would then need to look at, well, what are the actual elements that a jury is required to determine, so . . . But wouldn't that be determined in part by what the state of Connecticut says would have to be shown? Right. And so we'd have . . . And I believe the jury instructions will follow along to what the statutory language provides. And therefore, that would set forth what are the elements. Yes, as construed by Connecticut's courts. Sure. As construed by the Connecticut's courts, Your Honor. But I think the important part of that analysis, again, is that if we're going to then take that as part of the definition, and if we are going to apply matter absorum in the Board's decisions, even though I don't believe that's what Esquivel-Quintana would direct, even in that case, the Connecticut statute doesn't meet the definition, because as the government pointed out, there's this issue with is general intent sufficient to meet what the Board has defined as intent that has to be sufficiently high. And again, the Connecticut definition and the Connecticut mens rea necessarily to commit that act is not that sufficiently high level of intent that the Board . . . Why is general intent sufficiently high? I'm not following. It includes recklessness as well, Your Honor. And that is, in and of itself, under some of the Board's case law, that that, in and of itself, is not a high level of intent, high enough of recklessness mens rea to show that the person had this high level intent to commit the acts. I want to take you back to your argument that the BIA considered this. I'm looking at the BIA's decision at S.P.A. 5, and it says, on appeal, the respondent makes no substantive arguments challenging the immigration judge's finding that this conviction constitutes a child abandonment. We accordingly affirm his finding as to this ground of removability. And then the rest of the decision is all about aggravated felony in the context of serious crime. I'm not sure where the BIA discussed the sufficiency of the child abuse . . . whether your client's conviction fit that child abuse. Indeed, it suggests that you didn't raise that argument. Am I missing something? Your Honor, again, and I would note, it was a . . . he had prior counsel prior to us . . . No, no. I understand this is not yours. I'm just looking to see . . . Right. What we would point to, Your Honor, is the fact that the immigration judge did extensively address this issue . . . . . . and that we wouldn't address the sufficiency of that finding for the first time. You suggested to us that, no, the BIA had extensively discussed it, and I don't think so. And I understand. Thank you for Your Honor's clarification. I think I was mixing the definition of the sexual abuse of a minor . . . Right, as long as we're on the same page. Thank you, Your Honor. Although, again, I would just point out to Your Honors that this new case with Esquivel-Quintana, I think, does very directly relate to that issue of child abuse, even if it hadn't been best preserved. I think, given the fact that this will extensively impact the petitioner in the future, and not just the petitioner, but anyone else raising these issues under the Connecticut Risk of Injury Statute, that it's appropriate in this case, perhaps, to remand to the Board for further analysis in light of the Esquivel-Quintana decision. A further analysis to find . . . to decide what? To determine whether or not risk of injury to a minor qualifies as a crime of child abuse, neglect, or abandonment, and also whether or not it qualifies as a crime of an aggravated felony sexual abuse. Thank you. Thank you. Thank you both. We'll reserve decision.